Filed 6/12/25  P. v. Delgado CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ELIAS ORTEGA DELGADO,<br><br>    Defendant and Appellant. | G063049<br><br>(Super. Ct. No. 09NF2376)<br><br>O P I N I O N |

Appeal from a postjudgment order of the Superior Court of Orange County, Gary S. Paer, Judge. Reversed and remanded with directions.

Siri Shetty, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher P. Beesley and Michael D. Butera, Deputy Attorneys General, for Plaintiff and Respondent.

Elias Ortega Delgado appeals from a postjudgment order denying his petition for resentencing under Penal Code section 1172.6 (all undesignated statutory references are to this code) at the prima facie stage. Delgado argues the record of conviction does not refute his allegation he was convicted under an invalid theory (the natural and probable consequences doctrine) and could not be convicted of first degree murder under current law. We agree and reverse with directions.

BACKGROUND

In 2011, the prosecution filed an information against Delgado, charging him and two codefendants with murder (§ 187, subd. (a); count 1) and active participation in a criminal street gang (§ 186.22, subd. (a); count 2). The prosecution further alleged a gang-murder special circumstance (§ 190.2, subd. (a)(22)), a criminal street gang sentencing enhancement (§ 186.22, subd. (b)(1)), and a firearm enhancement (§ 12022.53, subd. (d) & (e)(1)).

In 2013, Delgado proceeded to jury trial on the above information. After closing arguments, the trial court instructed the jury on the general principles of aiding and abetting as follows: "A person may be guilty of a crime in two ways. One, he or she may have directly committed the crime. I will call that person the perpetrator. Two, he or she may have aided and abetted a perpetrator, who directly committed the crime. [¶] A person is guilty of a crime whether he or she committed it personally or aided and abetted the perpetrator. [¶] Under some specific circumstances, if the evidence establishes aiding and abetting of one crime, a person may also be found guilty of other crimes that occurred during the commission of the first crime." (CALCRIM No. 400.)

2

For direct aiding and abetting, the trial court instructed the jury in relevant part as follows: "To prove that the defendant is guilty of a crime based on aiding and abetting that crime, the People must prove that: [¶] 1. The perpetrator committed the crime; [¶] 2. The defendant knew that the perpetrator intended to commit the crime; [¶] 3. Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime; [¶] AND [¶] 4. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime. [¶] Someone aids and abets a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime." (CALCRIM No. 401.)

The trial court instructed the jury on the natural and probable consequences doctrine, as it was understood at the time, by a modified instruction that provided in pertinent part as follows: "Before you may decide whether the defendant is guilty of murder, you must decide whether he is guilty of challenging someone to fight. [¶] To prove that the defendant is guilty of murder, the People must prove that: [¶] 1. The defendant is guilty of challenging someone to fight; [¶] 2. During the commission of the challenge to fight[,] a coparticipant in that challenge to fight committed the crime of murder; [¶] AND [¶] 3. Under all of the circumstances, a reasonable person in the defendant's position would have known that the commission of the murder was a natural and probable consequence of the commission of the challenge to fight. [¶] A coparticipant in a crime is the perpetrator or anyone who aided and abetted the perpetrator. It does not include a victim or innocent bystander. [¶] A natural and probable consequence is one that a reasonable person would know is likely to happen if nothing unusual

3

intervenes. In deciding whether a consequence is natural and probable, consider all of the circumstances established by the evidence. If the murder was committed for a reason independent of the common plan to commit the challenging someone to fight, then the commission of murder was not a natural and probable consequence of the challenge to fight." (CALCRIM No. 403.)

The trial court gave the jury modified instructions on disturbing the peace (fighting or challenging someone to fight) (CALCRIM No. 2688), first degree murder (premeditated murder) (CALCRIM No. 521), and first or second degree murder with malice aforethought (CALCRIM No. 520).

For the gang-murder special circumstance, the trial court modified CALCRIM No. 736 as follows: "The defendant is charged with the special circumstance of committing murder while an active participant in a criminal street gang in violation of Penal Code section 190.2[, subdivision] (a)(22). [¶] To prove that this special circumstance is true, the People must prove that: [¶] 1. The defendant intentionally killed Renato Gaitan or aided and abetted the killing of Renato Gaitan; [¶] 2. At the time of the killing, the defendant was an active participant in a criminal street gang; [¶] 3. The defendant knew that members of the gang engage in or have engaged in a pattern of criminal gang activity; [¶] AND [¶] 4. The murder was carried out to further the activities of the criminal street gang. [¶] . . . [¶] An aider and abettor must have the intent to kill Renato Gaitan for the special circumstance to apply."

The jury convicted Delgado of first degree murder, found true the allegations as to the murder, and convicted him of active participation in a criminal street gang. The trial court sentenced him to life without the possibility of parole, consecutive to a term of 25 years to life. It struck the

4

criminal street gang sentencing enhancement (§ 186.22, subd. (b)(1)) for purposes of sentencing. It also stayed the sentencing term as to count 2 pursuant to section 654.

In 2014, a panel of this appellate court affirmed the judgment. (*People v. Delgado* (Nov. 10, 2014, G048668) [nonpub. opn.].)

In 2023, Delgado filed a petition for resentencing under section 1172.6. In the petition, he alleged he was convicted of murder under felony murder, the natural and probable consequences doctrine, or another theory where malice was imputed based solely on his participation in a crime. He also alleged he could not now be convicted of murder due to amendments to sections 188 and 189 effective January 1, 2019. The trial court appointed counsel to represent Delgado.

The prosecution opposed Delgado's petition, arguing he failed to make a prima facie showing of eligibility for relief. The prosecution asserted the record of conviction showed the jury had to find Delgado possessed an intent to kill when it convicted him of first degree murder, "regardless of whether he was the actual perpetrator or an aider and abettor of the murder." The prosecution also contended, given the jury found true the gang-murder special-circumstance allegation, the jury had to find Delgado killed Gaitan or, with an intent to kill, aided and abetted the killing.

After a hearing (§ 1172.6, subd. (c)), the trial court denied Delgado's petition in a statement of decision on the ground he had not made a prima facie case for relief. It concluded the jury found Delgado committed first degree murder. It explained:

"To find [Delgado] guilty of first[ ]degree murder, the jury had to conclude that [Delgado] had the intent to kill. The instructions provided to the jury clearly specified this requirement.

5

"Additionally, the jury was instructed on aiding and abetting the murder, which required the jury to find that [Delgado] personally intended to kill. The jury was required to find that [Delgado] personally intended to kill, regardless of whether he was the actual perpetrator or an aider and abettor of murder.

"Finally, in finding the gang special circumstance allegation true, the jury necessarily found that [Delgado] acted with the intent to kill. To find that the gang special circumstance to be true, the jury either found that [Delgado] actually killed Gaitan, or that [Delgado], with an intent to kill, aided and abetted the killing of Gaitan. Under either theory, [Delgado] would be guilty of murder under current law."

After the denial of the petition, the California Supreme Court decided *People v. Curiel* (2023) 15 Cal.5th 433 (*Curiel*). Delgado timely appealed.

## DISCUSSION

### I.

### SECTION 1172.6

Effective January 1, 2019, Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Stats. 2018, ch. 1015; Senate Bill 1437) narrowed the scope of the felony-murder rule, with certain exceptions, and "eliminated liability for murder as an aider and abettor under the natural and probable consequences doctrine." (*People v. Arellano* (2024) 16 Cal.5th 457, 468.) It did this by amending section 188, which defines malice, and section 189, the felony-murder statute. (*Curiel, supra,* 15 Cal.5th at pp. 448–449; *People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).) Senate Bill 1437 also created a procedure, in what is now section 1172.6, for defendants previously convicted of murder to obtain retroactive relief if they could not be convicted of murder

under the amended law. (*Lewis*, at p. 957.) Subsequently, the Legislature extended relief to defendants convicted of murder under a theory in "which malice is imputed to a person based solely on that person's participation in a crime." (§ 1172.6, subd. (a), as amended by Sen. Bill No. 775 (2021–2022 Reg. Sess.); Stats. 2021, ch. 551, § 2.)

The procedure begins when a defendant previously convicted of a qualifying offense files a petition for relief in the trial court. (§ 1172.6, subds. (a) & (b)(1).) Once the court receives the petition, it shall appoint counsel if requested by the petitioner. (§ 1172.6, subd. (b)(1)–(3).) After the prosecution has had an opportunity to file a response and the petitioner to file a reply, the court shall "hold a hearing to determine whether the petitioner has made a prima facie case for relief." (§ 1172.6, subd. (c).)

"At the prima facie stage, a court must accept as true a petitioner's allegation that he or she could not currently be convicted of a homicide offense because of changes to section 188 or 189 made effective January 1, 2019, unless the allegation is refuted by the record" of conviction. (*Curiel, supra*, 15 Cal.5th at p. 463; see *People v. Patton* (2025) 17 Cal.5th 549, 562–562 [discussing prima facie stage].) "And this allegation is not refuted by the record unless the record conclusively establishes every element of the offense. If only *one* element of the offense is established by the record, the petitioner could still be correct that he or she could not currently be convicted of the relevant offense based on the absence of *other* elements." (*Curiel, supra*, 15 Cal.5th at p. 463.)

"The record of conviction will necessarily inform the trial court's prima facie inquiry under section 117[2.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis, supra*, 11 Cal.5th at p. 971.) "It is only where the record of conviction

7

establishes the petition lacks merit as a *matter of law* that the court may deny the petition without a hearing." (*People v. Lopez* (2023) 88 Cal.App.5th 566, 576; accord *Lewis*, at p. 971 [if the record of conviction contains facts refuting the petition's allegations, the court may make an adverse credibility determination].) "[A]t this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Lewis*, at p. 972.) Nonetheless, the court "may look to the jury's verdicts, and the factual findings they necessarily reflect, to determine whether the record of conviction refutes the" petition's factual allegations. (*Curiel, supra*, 15 Cal.5th at p. 465.) If the court denies the petition without issuing an order to show cause, it must state its reasons. (§ 1172.6, subd. (c).)

However, if the petitioner makes a prima facie showing of entitlement to relief, the trial court must issue an order to show cause. (§ 1172.6, subd. (c); *People v. Strong* (2022) 13 Cal.5th 698, 708.) Unless the parties stipulate the petitioner is eligible for relief, the court shall hold a hearing within the prescribed time to determine whether to grant the petitioner relief. (§ 1172.6, subd. (d)(1) & (2).) "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder . . . under California law as amended . . . ." (§ 1172.6, subd. (d)(3).)

A reviewing court conducts a de novo review of a trial court's denial of a section 1172.6 petition at the prima facie stage. (*Lewis, supra*, 11 Cal.5th at p. 961; *People v. Williams* (2022) 86 Cal.App.5th 1244, 1251.)

## II.

### THE RECORD OF CONVICTION DOES NOT CONCLUSIVELY ESTABLISH DELGADO'S INELIGIBILITY FOR RELIEF

Delgado contends the trial court erred by denying his section 1172.6 petition for resentencing at the prima facie stage. He argues the court improperly held the jury's finding of intent to kill—specifically, as reflected in the true finding for the gang-murder special-circumstance allegation—conclusively establishes his ineligibility for relief. He asserts two California Supreme Court cases are instructive, *Curiel, supra*, 15 Cal.5th 433 and *In re Lopez* (2023) 14 Cal.5th 562 (*Lopez*). We agree.

*Curiel* addressed "the effect of the jury's true finding on the gang-murder special circumstance, specifically its finding that [the petitioner] intended to kill, on his ability to state a prima facie case for relief under Senate Bill 1437." (*Curiel, supra*, 15 Cal.5th at pp. 440–441.) In *Curiel*, the trial court instructed the jury on direct aiding and abetting as well as the natural and probable consequences doctrine (with disturbing the peace and carrying a concealed firearm by a gang member as the target offenses). (*Id.* at p. 446.) It also gave the jury the following gang-murder special-circumstance instruction: "'To prove that this special circumstance is true, the People must prove that: [(1)] the defendant intended to kill; [(2)] at the time of the killing the defendant was a member in a criminal street gang; and [(3)] the murder was carried out to further the activities of the criminal street gang.'" (*Id.* at p. 447.) "[T]he jury convicted [the petitioner] of first degree murder and found true the gang-murder special-circumstance allegation and the criminal street gang sentencing enhancement." (*Id.* at p. 447.) The petitioner filed a resentencing petition, alleging the jury convicted him of first degree murder under the natural and probable consequences doctrine and he could not be

9

convicted of murder under current law. (*Ibid.*) The trial court denied the petition at the prima facie stage. (*Id.* at pp. 447, 450.)

The California Supreme Court held the trial court erred by denying the petition because, based on the jury instructions, "the findings the jury must have made are insufficient to conclusively establish that [the petitioner] is liable for murder under current law." (*Curiel, supra*, 15 Cal.5th at p. 471.) Our high court explained, while the jury's intent to kill finding (which was required for the gang-murder special circumstance) should be given preclusive effect in resentencing proceedings under section 1172.6, such a finding does not necessarily render a petitioner ineligible for relief. (*Curiel, supra*, at pp. 460–461.) The intent to kill is only one element; it does not by itself "cover all of the required elements" and demonstrate a petitioner "is liable for murder under any valid theory." (*Id.* at p. 463.) "For example, 'under direct aiding and abetting principles, an accomplice is guilty of an offense perpetrated by another [e.g., murder] if the accomplice aids the commission of that offense with "knowledge of the direct perpetrator's unlawful intent and [with] an intent to assist in achieving those unlawful ends."'" (*Ibid.*)

Our high court continued: "While a finding of intent to kill does not, itself, suffice to refute a petitioner's allegation under section 1172.6, subdivision (a)(3), a trial court does not end its prima facie inquiry there." (*Curiel, supra*, 15 Cal.5th at p. 463.) The jury made other findings (e.g., findings based on jury instructions), which might be relevant to the petitioner's liability for murder. (*Ibid.*) Under the natural and probable consequences doctrine, the jury must have found "only that [the petitioner] knew that [the alleged perpetrator] intended to commit one of the underlying

target offenses and that [the petitioner] intended to aid him in *that* offense, not murder." (*Id.* at p. 468.)

Additionally, the jury did not necessarily find the requisite mens rea for direct aiding and abetting liability. (*Curiel, supra*, 15 Cal.5th at p. 468.) That is, the jury was not required to find certain elements of aiding and abetting, such as: (1) the aider and abettor had "'knowledge of the unlawful purpose of the perpetrator' and 'the intent or purpose of committing, encouraging, or facilitating' the commission of the offense"; or (2) alternatively, the aider and abettor, in the context of implied malice murder, knew "the perpetrator intend[ed] to commit a life-endangering act, intend[ed] to aid the perpetrator in the commission of that act, [knew] the act [was] dangerous to human life, and act[ed] in conscious disregard for human life." (*Ibid.*) "[T]he aider and abettor [must] actually foresee the homicidal or life-endangering consequences of the perpetrator's actions in this context. [Citation.] An aider and abettor who knows and intends to aid the direct perpetrator in certain conduct, but does not subjectively appreciate that the conduct is dangerous to human life, is not liable for the murder that results because the aider and abettor has not sufficiently concerned himself with that murder. This conclusion holds even if the aider and abettor separately intends to kill. Intent to kill itself does not establish a sufficient mens rea regarding a murder or life-endangering conduct that the aider and abettor has no intent to aid or encourage—and that the aider and abettor does not even subjectively know will occur. Indeed, a defendant could act with intent to kill but at the same time believe the actual perpetrator could never risk harm to another human being—and be genuinely surprised when the actual perpetrator commits a life-endangering act." (*Id.* at p. 470.)

11

Therefore, "[t]he jury could have relied on the natural and probable consequences doctrine to convict [the petitioner] of murder, and the findings required under that theory—even when combined with the finding of intent to kill required by the gang-murder special circumstance—do not encompass all of the elements of any theory of murder under current law. These findings were therefore insufficient to rebut [the petitioner's] allegation that he could not be convicted of murder under current law, and the trial court erred by denying [the petitioner]'s petition for resentencing at the prima facie stage." (*Curiel, supra*, 15 Cal.5th at p. 471.)

*Lopez* concerned the impact of a gang-murder special-circumstance finding in a harmless error analysis in the context of a writ of habeas corpus petition.[1] (*Lopez, supra*, 14 Cal.5th at pp. 567, 568.) In *Lopez*, the jury received instructions on valid (premeditated murder and aiding and abetting premeditated murder) and invalid (natural and probable consequences) theories. (*Id.* at pp. 576, 579.) The trial court instructed the jury on the gang-murder special circumstance in relevant part as follows: "'If you find that a defendant was not the actual killer of a human being, or if you are unable to decide whether the defendant was the actual killer or an aider and abettor, you cannot find the special circumstance to be true as to that defendant unless you are satisfied beyond a reasonable doubt that such defendant with the intent to kill aided, abetted, counseled, commanded, induced, solicited, requested, or assisted any actor in the commission of the murder in the first degree. [¶] You must decide separately as to each of the

---

[1] While *Lopez* did not involve a section 1172.6 resentencing petition, habeas corpus proceedings are "analogous" to the "prima facie inquiry," and we therefore find *Lopez*'s reasoning persuasive. (*Curiel, supra*, 15 Cal.5th at p. 460.)

defendants the existence or nonexistence of each special circumstance alleged in this case.' (See CALJIC No. 8.80.1.) The court continued, 'To find that the special circumstance "intentional killing by an active street gang member" is true, it must be proved: [¶] 1. The defendant intentionally killed the victim; [¶] 2. At the time of the killing, the defendant was an active participant in a criminal street gang; [¶] 3. The members of that gang engaged in or have engaged in a pattern of criminal gang activity; [¶] 4. The defendant knew that the gang members engaged in or have engaged in a pattern of criminal gang activity; and [¶] 5. The murder was carried out to further the activities of the criminal street gang.' (See CALJIC No. 8.81.22.)" (*Lopez*, at p. 577.)

After the defendant was convicted of first degree murder and the jury found true the gang-murder special circumstance, he filed a petition for writ of habeas corpus, alleging the jury was instructed on an invalid theory, the natural and probable consequences doctrine of aiding and abetting first degree murder. (*Lopez, supra*, 14 Cal.5th at p. 578.) The prosecution argued any error was harmless because the jury did not rely on that invalid theory. (*Ibid.*) It noted the jury's gang-murder special-circumstance finding showed the jury found the defendant intended to kill. (*Ibid.*)

The Supreme Court held the gang-murder special-circumstance instruction "does not in and of itself show the jury made the necessary findings for a valid theory." (*Lopez, supra*, 14 Cal.5th at p. 588.) It explained, "Under the trial court's jury instructions (see CALJIC No. 8.80.1), this true finding shows that the jury determined beyond a reasonable doubt that Lopez either (1) 'intentionally killed the victim' or (2) 'with the intent to kill aided, abetted, counseled, commanded, induced, solicited, requested, or assisted any actor in the commission of the murder in the first degree.'" (*Id.* at p. 586.) "Even assuming the jury found the gang-murder special circumstance true

13

based on its belief that [the defendant] 'intentionally killed the victim,' the Attorney General concedes the special circumstance does not itself establish the elements of first degree premeditated murder under either a direct perpetrator or an aiding and abetting theory. Based on the special circumstance instructions alone, if the jury found [the defendant] was an actual killer, it is reasonably possible the jury could have believed he did not personally premeditate and was liable only for second degree murder." (*Id.* at p. 586.)

The high court continued: "If the jury did not find that [the defendant] was an actual killer, it must instead have determined that [the defendant] 'with the intent to kill aided, abetted, counseled, commanded, induced, solicited, requested, or assisted any actor in the commission of the murder in the first degree.' (See CALJIC No. 8.80.1.) The Court of Appeal described the true finding as proof that '[the defendant] acted with an intent to kill, as opposed to the intent to commit one of the target crimes' and was therefore persuaded that the jury made the findings necessary to support the valid theory of direct aiding and abetting. But intent to kill is only one of the elements required to prove direct aiding and abetting. It does not, itself, show the jury necessarily found [the defendant] guilty on a proper theory." (*Lopez, supra*, 14 Cal.5th at pp. 586–587.)

Here, similar to *Curiel* and *Lopez*, the jury received instructions on murder, direct aiding and abetting, and the natural and probable consequences doctrine. In closing argument, the prosecution emphasized the jury could convict Delgado for murder because he was the perpetrator. But the prosecution still argued the jury could convict him for murder as an aider and abettor, under either a direct aiding and abetting theory or the natural and probable consequences doctrine. When the jury convicted Delgado of first

14

degree murder and found true the gang-murder special circumstance, the jury did not need to specify "which theory it found persuasive." (*Curiel, supra*, 15 Cal.5th at p. 467.) "Nor were the jurors required to agree on whether any defendant was guilty as a perpetrator" or "aider and abettor." (*People v. Campbell* (2023) 98 Cal.App.5th 350, 370.)

As in *Curiel* and *Lopez*, we hold the intent to kill finding standing alone is insufficient to cover all the requisite elements to establish first degree murder under a current valid theory. Here, the gang-murder special-circumstance instruction resembles the instruction in *Lopez*. Both instructions require the prosecution to prove the defendant intentionally killed the victim or had the intent to kill as an aider and abettor. (See *Lopez, supra*, 14 Cal.5th at pp. 577, 586.) Even if the jury found the gang-murder special circumstance true because Delgado intentionally killed the victim, "the special circumstance does not itself establish the elements of first degree premeditated murder under either a direct perpetrator or an aiding and abetting theory. Based on the special circumstance instructions alone, if the jury found" Delgado "was an actual killer, it is reasonably possible the jury could have believed he did not personally premeditate and was liable only for second degree murder." (*Id.* at p. 586.)

If the jury did not determine Delgado was the perpetrator, it must have instead found he had the intent to kill the victim as an aider and abettor and he aided and abetted the killing of the victim. But these are only some of the elements to prove direct aiding and abetting. The gang-murder special-circumstance instruction does not include other elements of aiding and abetting first degree murder, such as the aider and abettor's knowledge of the perpetrator's intent: "for a defendant to be liable for first degree murder as a direct aider and abettor, 'the prosecution must show that the

15

defendant aided or encouraged the commission of the murder with knowledge of the unlawful purpose of the perpetrator and with the intent or purpose of committing, encouraging, or facilitating its commission.'" (*Lopez, supra*, 14 Cal.5th at p. 587.) Therefore, the gang-murder special-circumstance instruction "does not in and of itself show the jury made the necessary findings for a valid theory." (*Id.* at p. 588.)

The Attorney General argues the trial court's modifications to the gang-murder special-circumstance instruction required the jury to find Delgado satisfied the actus reus elements of a valid murder theory, distinguishing the gang-murder special-circumstance instruction in *Lopez* from the instant case. The Attorney General asserts the instruction here, in contrast to the instruction in *Lopez*, required the jury find Delgado had the intent to kill and either intentionally killed or aided and abetted the killing of the victim. The Attorney General's arguments, which cite *People v. Morris* (2024) 100 Cal.App.5th 1016, 1025–1026, review granted July 17, 2024, S284751, concern the actus reus for murder. We conclude the intent to kill finding was insufficient to cover other requisite elements besides the actus reus and therefore do not reach the Attorney General's arguments the actus reus element was satisfied.

While the intent to kill finding standing alone is insufficient to establish first degree murder under any valid theory, we consider the jury's other findings that may be pertinent "to the remaining elements of the relevant homicide offense and conclusively refute a petitioner's allegation that he or she could not be convicted of murder under current law." (*Curiel, supra*, 15 Cal.5th at p. 463.) We conclude the jury did not necessarily find the required mens rea for direct aiding and abetting liability. "The aider and abettor must know the direct perpetrator intends to commit the murder or

16

life-endangering act and intend to aid the direct perpetrator in its commission. It is this mental relationship to the perpetrator's acts that confers liability on the aider and abettor." (*Id.* at p. 468.) Under the trial court's instructions here, the jury was not obligated to find Delgado had "'knowledge of the unlawful purpose of the perpetrator' and 'the intent or purpose of committing, encouraging, or facilitating' the commission of the offense." (*Id.* at p. 468.) Nor, in the context of implied malice murder, was the jury required to find Delgado knew "the perpetrator intend[ed] to commit a life-endangering act, intend[ed] to aid the perpetrator in the commission of that act, [knew] the act [was] dangerous to human life, and act[ed] in conscious disregard for human life." (*Ibid.*)

Because the court instructed the jury on the natural and probable consequences doctrine, the jury was required to find only Delgado knew the perpetrator intended to commit the target offense—challenging someone to fight—and Delgado intended to aid the perpetrator "in *that* offense, not murder." (*Curiel, supra*, 15 Cal.5th at p. 468.) And the jury was not "required to find that the underlying target" offense itself was "dangerous to human life." (*Ibid.*) Thus, even though the jury separately found Delgado had the intent to kill under the gang-murder special circumstance, such an intent by itself is inadequate to establish the required mens rea for aiding and abetting murder. (*Ibid.*)

In sum, we hold the record of conviction does not conclusively establish Delgado is liable for first degree murder under current law. The jury could have convicted Delgado of murder under the natural and probable consequences doctrine. "[T]he findings required under that theory—even when combined with the finding of intent to kill required by the gang-murder special circumstance—do not encompass all of the elements of any" first

17

degree murder theory under current law. (*Curiel, supra*, 15 Cal.5th at p. 471.) Accordingly, the trial court erred by denying Delgado's section 1172.6 petition for resentencing at the prima facie stage.

DISPOSITION

The postjudgment order denying Delgado's section 1172.6 petition is reversed. The matter is remanded for the issuance of an order to show cause and an evidentiary hearing pursuant to section 1172.6, subdivisions (c) and (d).


MOTOIKE, J.

WE CONCUR:


SANCHEZ, ACTING P. J.


DELANEY, J.